436 So.2d 567 (1983)
STATE of Louisiana
v.
Sheral LYNCH.
No. 82-KA-1080.
Supreme Court of Louisiana.
June 27, 1983.
As Amended June 30, 1983.
Rehearing Denied September 1, 1983.
*568 William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., E.L. Edwards, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
William D. Dyess, Many, for defendant-appellant.
WATSON, Justice.
Defendant, Sheral Lynch, was convicted by a jury of the manslaughter of Jimmy Dyess and sentenced to twenty-one years at hard labor. LSA-R.S. 14:31. She has appealed her conviction and sentence.[1]

FACTS
Dyess died of a bullet wound to the brain inflicted by Sheral Lynch. At the time of the offense, on August 24, 1977, Sheral Lynch was nineteen and had been living with Dyess since she was sixteen. He was in his middle forties. According to Sheral, Dyess had hit her and thrown her on the bed. While preparing to inflict a severe beating, he said: "`I'm going to beat your goddam [sic] ass and make you tell me the truth.'" (Tr. 103) She grabbed a gun out of the dresser drawer and ran out the back door. He followed her and she backed away, saying "don't come up on me, Jimmy." (Tr. 131-132) Dyess replied: "you ain't going no dam [sic] where." (Tr. 124) She repeated her warning several times before shooting the gun. She did not aim before she shot and was not very familiar with guns.
Three witnesses confirmed Sheral's account of the conversation and the shooting. Henry Waites heard Sheral say "don't come up on me" several times before hearing a shot. Annie B. Matthews heard Dyess curse Sheral and saw her backing away from him. According to Matthews' testimony, Sheral told Dyess not to come up on her three times before shooting the gun. Willie Mae Carter heard Dyess curse while Sheral backed away from him, warning him three times to leave her alone.
Several weeks before this encounter, Dyess had beaten Sheral with a bat to the point where she was unable to walk for a couple of weeks. She had been seen limping around "the quarters" (Tr. 81). On another occasion, Dyess had knocked out one of her teeth; he had beaten her twenty or thirty times. Dyess was a logger and was described as able bodied, physically fit and much stronger than Sheral.
Donie Jane Lynch testified that she had lived with the deceased for about ten years before leaving because she got tired of his beatings.[2] At one time he had cut her on the elbow with a butcher knife. When they first parted, she had to hide from him. She had seen Sheral after she was beaten with the baseball bat. She testified that Dyess was a violent man who had beaten all the women he had ever had and "he had quite a few of them". (Tr. 142)
Annie Lee Scott had also lived with Jimmy Dyess about ten years and said he beat her pretty often; the worse beating occurred when she was pregnant with their child. She apparently had a miscarriage as a result. She once had Dyess arrested when he hit her in the leg with a rake and she finally left him.
Leland Philyaw had known Dyess twenty-five or thirty years and Dyess had once cut him. He had seen Sheral when she was crippled and had a black eye and other injuries. According to Philyaw, the consensus in the community was that Jimmy Dyess was a dangerous man.
The Town Marshal of Zwolle testified that Sheral told him that she and Jimmy Dyess had had an argument the night of the shooting, but not a fight. An employee of the marshal's office also testified that Sheral said she and Jimmy Dyess had only had an argument the night of the shooting. Sheral had no visible bruises that evening. Sheral had once signed an affidavit against *569 Dyess, but she withdrew the complaint after he was arrested.

LAW
LSA-R.S. 14:20 deals with justifiable homicide and states in pertinent part:
"A homicide is justifiable:
"(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or...."
Sheral Lynch asserted that she acted in self-defense. The state had the burden of establishing beyond a reasonable doubt that she did not act in self-defense. State v. Jackson, 419 So.2d 425 (La., 1982); State v. Patterson, 295 So.2d 792 (La., 1974).

ISSUE
The issue is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[3]

CONCLUSION
The evidence presented at trial established beyond any doubt that defendant Lynch reasonably believed she was in imminent danger of receiving great bodily harm and acted in self-defense. Although Sheral Lynch was armed, she was too unfamiliar with guns to rely on that fact. She was trying to retreat and asked Dyess to leave her alone. In view of the past beatings inflicted on her and other women and Dyess' dangerous character, her fear and apprehension were reasonable. State v. Jackson, supra; Patterson, supra.[4] A rational trier of fact could not have found on the evidence presented that Sheral Lynch did not act in self-defense. Jackson v. Virginia, supra.
For the foregoing reasons, the conviction and sentence are reversed and defendant is ordered discharged.
REVERSED.
LEMMON, J., concurs, but disagrees that the state has the burden of proof regarding the affirmative defense of self defense.
MARCUS, J., dissents.
BLANCHE, J., dissents and assigns reasons.
BLANCHE, Justice (dissenting).
I disagree that no rational trier of fact could have found that the defendant did not act in self-defense. On the contrary, twelve jurors heard the evidence, viewed the witnesses, and ultimately determined that the defendant had shot the victim with the specific intent to kill or inflict great bodily harm. I question whether the shooting was reasonably necessary to repel what the defendant believed was an impending beating. If anything, the victim's penchant for physical violence supports the jury's view that the killing arose in such provocative circumstances that a manslaughter verdict was in order rather than conviction of a more serious crime.
In my view, the 21 year sentence is excessive and the facts of the case, which clearly establish the violent nature of the victim, represent very strong mitigating circumstances which were not accorded their proper weight by the trial court. This is not the type of criminal defendant for whom the maximum sentence should be reserved.
I respectfully dissent.
NOTES
[1] Although defendant Lynch was sentenced on November 24, 1978, there was no appeal until an out of time appeal was granted on March 2, 1982.
[2] Donie Jane Lynch is Sheral's "Auntie". (Tr. 138)
[3] Defendant's supplemental assignment of error: the other assignments of error are pretermitted.
[4] See the discussion of the "battered woman syndrome" at 15 Conn.L.Rev. 121.