458 So.2d 454 (1984)
STATE of Louisiana
v.
James MARTIN.
No. 82-KA-2262.
Supreme Court of Louisiana.
October 15, 1984.
Rehearing Denied November 15, 1984.
*457 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., Harmon Drew, Jr., Asst. Dist. Atty., for plaintiff-appellee.
John W. Montgomery, Fish, Montgomery & Robinson, Minden, for defendant-appellant.
DENNIS, Justice.
Defendant, James Martin, was indicted for second degree murder, convicted by a jury of that same charge, and sentenced to life imprisonment, without benefit of parole, probation, or suspension of sentence. Defendant appeals his conviction and sentence alleging 12 assignments of error. Because none of the assignments of error have merit, the defendant's conviction and sentence are affirmed. Since we have found that all but three of the defendant's assignments of error concern the application of settled principles of law, we have rendered our decision on all but those three assignments in an unpublished opinion attached to this opinion as an appendix.

FACTS
The decedent, Gloria Martin, the defendant's wife, was killed during a domestic argument which occurred in the early morning hours of December 13, 1980. The shooting occurred in the family's van which was parked in the driveway of the Martin house. The three Martin sons, Carl, Darren, and Eric, (ages 22, 19, and 13, respectively at the time of trial), were all living at home at the time. Carl testified that the kitchen table in the house had been broken while he and his younger brother, Eric, were engaged in horseplay the previous afternoon. Eric testified that the table had been broken when Carl threw him against it while they were fighting. In any event, the broken table in the kitchen precipitated the argument which resulted in Gloria Martin's death.
The decedent had gone to work at Western Electric at about 2:30 p.m. on the afternoon of December 12th. She normally returned home from work around 1:30 to 1:45 a.m. However, on the morning of December 13th, she returned home later than usual. According to expert testimony, Gloria Martin was acutely intoxicated at the time of her death. The defendant acknowledged that he also had been drinking shortly before the incident but stated that he was not drunk. Gloria Martin and James Martin were sitting at the kitchen table after Gloria's arrival. Apparently when Gloria leaned on the table, the table fell, and she began to argue with the defendant. The defendant testified that he then woke Carl to find out what happened to the table, although Carl stated that he awoke when his father began beating him. Eventually, the whole family gathered in the kitchen. The defendant testified that after Eric had told him about the fight and the damage to the table, he told Carl that he had "had enough." There was evidence of previous difficulties between Carl and the defendant. The defendant told Carl to get out and Carl said he would leave. The defendant testified that Gloria Martin told him that if Carl left then she would leave also. Both the defendant and Eric testified that Gloria Martin went into the back part of the house. The defendant testified that he was afraid that she was going to get a gun. After Carl left on foot the defendant told the other boys to go to bed. Eric testified that he was in the living room near a front window for the next hour or so, trying to go to sleep on the couch.
*458 As to almost all of the remaining events which led to Gloria Martin's death, there are no available witnesses other than the defendant. The defendant testified that he went outside and hid himself in the carport because he was afraid of Gloria Martin. He also stated that he saw Gloria Martin come out and she had his dark colored .32 caliber pistol in her hand. Gloria Martin frequently carried a .357 magnum with her for protection, and the .357 was in fact found beneath her body when the police arrived later. However, the .357 was unloaded and unfired. The defendant admits that he was armed with a silver colored .32 caliber pistol at the time. The defendant says he came out from hiding when he thought Gloria Martin had calmed down, but that they continued to argue. After a while the two got in the van, Gloria Martin on the driver's side and the defendant on the passenger's side. At one point the defendant left the van and started up the family pick up, but the defendant then returned to the van. According to the defendant the two were outside and sitting in the van for an hour or more before the shooting occurred. However, Carl Martin testified that he was only gone for twenty minutes before he heard the shots.
The defendant claims that the shooting occurred after he had been pleading with Gloria not to leave. According to the defendant, Gloria Martin still had the dark colored .32 when she became angry and told him to get out of the van or she would kill him. Eric, who was inside the house on the couch claimed to have heard Gloria Martin make this statement. At that point, according to the defendant, Gloria raised the .32 as if to shoot the defendant and the defendant grabbed it out of her hand. She then pulled the .357 magnum out of her purse, according to the defendant, and when she did he shot her. Thus, the defendant contends he acted in self-defense.
A number of facts conflict with the defendant's testimony of how he acted in self-defense. Most significant is the fact that the defendant shot Gloria Martin not once but three times. There is significant evidence that he fired one or possibly two other shots at her as well. Also important is the fact that after shooting Gloria Martin the defendant turned the dark colored.32 on himself in a clear suicide attempt. He survived apparently only because of a defect in the cartridge which was in the pistol when he fired it at his head. In addition, medical evidence established that the shots which killed Gloria Martin were fired from at least 24 inches away, a fact inconsistent with defendant's contention that the shooting occurred immediately following a struggle for the .32. Finally, the defendant's credibility is undermined by statements he made immediately after the shooting. The defendant told one witness, Lola Gilliam, that Gloria had shot him first, and that he then took the gun away and shot her. In a later conversation with a Ronald Garrett, the defendant said that Gloria shot him first in the bedroom, and that he then took the gun and shot her. Both of these statements contradict the defendant's testimony during the trial.
After the defendant shot himself he threw the gun down and then left the van to tell Darren (the middle son) that he had shot his mother. Defendant testified that he did not know what to do next, and that he then pulled out his other gun (the silver colored .32) from his pocket. He approached a neighbor's house exclaiming that he had shot his wife and asking that an ambulance be called. When the neighbor became frightened at the sight of the defendant approaching the door with the gun in his hand, he threw the gun down into some bushes. When the police came the defendant repeated that he had shot his wife and asked whether an ambulance was coming.

ASSIGNMENT OF ERROR NO. 9
By this assignment the defendant contends that the trial court erred in sustaining the state's objection when the defendant attempted to testify that approximately five years before the shooting his wife "ran over" him. We agree that the trial court *459 erred in its ruling, but the error does not warrant reversal of this conviction.
The defendant in this case argued that he acted in self-defense. When a defendant claims that he had to kill in self-defense, the state has the burden of proving beyond a reasonable doubt that he did not act in self-defense. State v. Lynch, 436 So.2d 567 (La.1983); State v. Patterson, 295 So.2d 792 (La.1974). Before the defendant can introduce evidence of the decedent's dangerous character or threats against the accused, the defendant must present appreciable evidence of an "overt act" of the decedent directed at the defendant which manifests to the mind of a reasonable person a present intention of the decedent to kill or do great bodily harm to the defendant. La.R.S. 15:482; State v. Edwards, 420 So.2d 663 (La.1982); State v. Lee, 331 So.2d 455 (La.1976). The defendant's testimony that Gloria Martin "came up" with the .32 and threatened him constitutes appreciable evidence of an overt act in this case. Thus, the evidence of the decedent's prior threats or acts of violence against the defendant should have been admissible, since it was relevant to show either (1) the defendant's reasonable apprehension of danger that would justify his conduct, or (2) that the victim was the aggressor in the conflict. See State v. Edwards, supra.
The trial court barred admission of the testimony as to the prior incident on the ground that the incident was not "close enough in time to be relevant." The incident about which the defendant wished to testify occurred five years before the shooting. We find that the trial court erred in not admitting the testimony. We have previously stated that "the distance in time from the moment of the offense on trial does not necessarily destroy the capacity of the deceased's violent act to create apprehension." State v. Thibeaux, 366 So.2d 1314, 1317 (La.1978). Generally, the remoteness in time of the prior difficulties between the defendant and the deceased should go to the weight of the evidence rather than its admissibility. State v. Thibeaux, supra. For these reasons we conclude that the trial court erred in finding that the evidence was not relevant because it was too remote in time. The evidence was relevant to the defendant's case and his attempt to show that he reasonably believed that his conduct was necessary. See generally, La.R.S. 15:441-42; State v. Ludwig, 423 So.2d 1073 (La.1983).
Our finding that the trial court erred in not admitting this evidence does not, however, end our inquiry. La.C.Cr.P. article 921 provides that a judgment or ruling "shall not be reversed ... because of any error ... which does not affect substantial rights of the accused." Moreover, in State v. Gibson, 391 So.2d 421 (La.1980), we adopted the test for "harmless error," of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under that test for "harmless error," the question is whether there is a reasonable possibility that the admission or exclusion of certain evidence, depending on the case, "might have contributed to the conviction." We also stated that the court must be able to declare that the error was "harmless beyond a reasonable doubt." Gibson, supra, 391 So.2d at 427. Considering the nature of the evidence which was excluded and the evidence which was received in this case, it is clear that the impact of the excluded evidence would have been minimal and that exclusion of the evidence was harmless beyond a reasonable doubt. First, even though admissible, the incident five years earlier would be accorded less weight by the jury because it was so distant in time. Second, and more importantly, the defendant was allowed to testify about another incident which occurred only a few months before the shooting. The defendant testified that about three months before Gloria Martin was shot she had scratched his face and had pointed the .357 magnum at him with its hammer cocked while he begged for his life. Since this testimony was admitted, evidence concerning the much earlier incident would have added little or nothing to show defendant's apprehension. If the *460 jury was not persuaded by the testimony concerning this most recent incident, it would not have rendered a different verdict if it had known of an additional incident much more distant in time. For these reasons, we find that although the trial court erred in refusing to allow evidence concerning the five year old incident, the error was harmless beyond a reasonable doubt.

ASSIGNMENT OF ERROR NO. 10
By this assignment of error the defendant contends that hearsay testimony was admitted in the following question by the assistant district attorney and response by the witness Ethel Parker:
Q: Mrs. Parker, did Gloria Martin ever tell you that if she would ever try to leave James [the defendant] that he might kill her?
A: Yes, sir.
The defense attorney then objected that the evidence was hearsay.[1] After hearing the arguments of counsel outside the presence of the jury the trial court admitted the evidence to show state of mind of the victim, citing State v. Raymond, 258 La. 1, 245 So.2d 335 (1971).
Hearsay is "testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out of court asserter." State v. Martin, 356 So.2d 1370, 1373 (La.1978) (This is Professor McCormick's short definition of hearsay. See McCormick, Evidence, section 246 (Cleary ed. 1972)). Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. See State v. Weedon, 342 So.2d 642 (La.1977); State v. Sheppard, 371 So.2d 1135 (La.1979); McCormick, supra, section 245. Thus, when an out-of-court statement is offered for a purpose other than to establish that a true assertion has been made the value of the statement as evidence does not depend on the credibility of the out-of-court asserter and the statement falls outside the scope of the hearsay exclusionary rule. McCormick, supra, section 249; 6 Wigmore, Evidence, sections 1766, 1788 (Chadbourne rev., 1976); 4 J. Weinstein, Evidence, Par. 801(c)[01] (1981).
The uses of an out of court statement "to show state of mind" present several instances of nonassertive uses of out of court statements. An out of court statement may be used circumstantially to show its effect on the state of mind of a person who heard the statement. See State v. Webb, 372 So.2d 1209 (La.1979); State v. Ford, 368 So.2d 1074 (La.1979); State v. Morgan, 211 La. 572, 30 So.2d 434 (1947); McCormick, supra, section 249; 6 Wigmore, supra, sections 1788-1789. An out of court statement may also be offered to show the speaker's state of mind. The statement may be a direct assertion of the speaker's state of mind or it may indirectly tend to establish that the speaker had a particular state of mind. If the statement is a direct assertion of the speaker's state of mind, then it is offered for the truth of the matter asserted but it usually falls within an exception to the hearsay rule for declarations of a then existing state of mind. See McCormick, supra, section 249; 6 Wigmore, supra, section 1790; 4 Weinstein, supra, Par. 801(c)[01] p. 801-72; Federal Rule of Evidence 803(3). If the statement only indirectly tends to prove a certain state of mind then it is not hearsay because the truth of the assertion and the credibility of the declarant are not relied upon. Rather, the fact that the statement was made, regardless of its truth, is relevant to show the speaker's knowledge, intent, or some other state of mind. State v. Edwards, 420 So.2d 663, 671 (La.1982); *461 State v. Sheppard, 371 So.2d 1135, 1142 (La.1979); McCormick, supra, sections 249, 295; 6 Wigmore, supra, section 1790. Although in each of the above instances the use of a statement to show state of mind would qualify as nonhearsay or as an exception to the hearsay rule, state of mind evidence is admissible only if the particular person's state of mind which is being shown is itself in issue or is relevant to prove a fact in issue. See State v. Weedon, supra. The fact that the statement is offered for a nonhearsay purpose does not alone make the statement admissible; the general requirement of relevance must also be met before the out of court statement is admissible evidence.
In this case a statement by the victim that her husband might kill her if she tried to leave him was offered as indirect proof of her state of mind. Therefore, the question is whether, regardless of the truth of the statement, the statement tends to prove a state of mind of the victim which is relevant to this case. The victim's statement that her husband might kill her if she tried to leave indicates that her state of mind was one of fear of the defendant and of anticipation that a certain event might trigger violence against her by the defendant. This state of mind is certainly relevant in this case. The case depended on a determination of whether Gloria Martin or James Martin was the aggressor in the conflict which occurred after she stated that she was leaving. The defendant attempted to show that the victim had armed herself and that she was the one who was likely to have provoked the violence. He specifically testified that she had threatened him with a gun before. Thus, the state acted properly in attempting to counteract the defendant's characterization of the victim and to explain certain aspect's of the victim's conduct. The fact that the victim took a gun with her out to the van could be explained by her fear that the defendant might attempt to harm her. Likewise, other seeming acts of aggression by the victim take on a different light if a reasonable fear of the defendant on the part of the victim is taken into consideration. Whether the victim had such a fear, whether there was a basis for it, and whether the victim's fearful state of mind continued until the night of this incident, were for the jury to decide. The prosecution was entitled to present relevant and otherwise admissible evidence of the victim's fear in support of its version of the events of that night. Therefore, because the victim's state of mind may have tended to prove that any apparently violent or hostile acts on her part were in fact only defenseive in nature, and because it may also have tended to prove that she was not the aggressor as the defendant contended, the statement showing state of mind was relevant state of mind evidence and therefore admissible. See State v. Sheppard, supra, 371 So.2d at 1142.
It is important to distinguish this case from certain past cases in which we dealt with state of mind evidence. This is not a case where the declarant's state of mind is offered to prove the acts of some person other than the declarant. In some of our past cases we dealt with the difficult problem of state of mind evidence offered to prove the acts of another. See State v. Weedon, 342 So.2d 642 (La.1977); State v. Doze, 384 So.2d 351 (La.1980); State v. Johnson, 381 So.2d 436 (La.1980). Those cases demonstrate the importance of the relevance requirement, but they are factually distinguishable from the instant case. Where the victim-declarant's state of mind is offered to prove the victim's subsequent acts, the problems of relevancy are not nearly so great as where the defendant's or another person's acts are sought to be proved. Although a state of mind evidenced by a speaker's remarks cannot be used to prove the speaker's past conduct, see Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933), McCormick, supra, section 294(c), it can be used to prove the speaker's subsequent conduct. State v. Sheppard, supra; See Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); McCormick, supra, section 294(b). Finally, although it might be argued in this case that the *462 length of time between the statement showing state of mind and the conduct sought to be proved or explained affects the determination of relevancy, such time considerations generally go to the weight of the evidence rather than to its admissibility.[2]
For the foregoing reasons this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 12
By this assignment of error the defendant contends that that the evidence against him was not sufficient to support a conviction of second degree murder. Under the due process standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a conviction cannot stand unless viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Under Louisiana statutory law, when circumstantial evidence is involved the rule is that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. In State v. Chism, 436 So.2d 464 (La.1983), we explained the relationship of the circumstantial evidence standard and the Jackson standard:
Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. 436 So.2d at 470.
In addition to these standards when a defendant claims self-defense the state has the burden of disproving that claim. State v. Lynch, supra; State v. Patterson, supra. Thus, the state had to prove that James Martin was not justified in killing Gloria Martin because he reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save himself. See La.R.S. 14:20.
Bearing in mind these standards, we have determined that there is sufficient evidence to support the defendant's conviction of second degree murder. There is no issue as to whether the defendant killed Gloria Martin. The only issue is whether he acted with legal justification. The following facts provide a sufficient basis on which the jury could have properly concluded that the defendant did not act in self-defense. The defendant shot Gloria Martin three times, and may have fired two other shots at her as well. Since one shot probably would have been all that was necessary for the defendant to defend himself, the fact that he fired at least three shots indicates that none of the shots were necessary. The fact that the defendant attempted suicide after the incident also weighs against the self-defense theory. The suicide attempt is more consistent with the mental state of a man who has murdered his wife than with that of a man who has killed his wife in self-defense. Furthermore, scientific evidence established that the shots were fired from more than 24 inches away. This fact is inconsistent with the defendant's claim that he shot Gloria Martin when she pulled the .357 magnum after he struggled with her to get the .32. Finally, the defendant gave several accounts of the incident which contradict his testimony at trial that he was in the van when he shot Gloria Martin in self-defense. The defendant told Lola Gilliam that Gloria *463 shot him first, and that he then took the gun away and shot her. He told another witness, however, that Gloria shot him first in the bedroom, and that he then took the gun and shot her. All of the evidence outlined above, when considered together, is sufficient for a rational trier of fact to reasonably conclude beyond a reasonable doubt that the defendant did not act in self-defense.
For the foregoing reasons we find this assignment of error to be without merit.
THE CONVICTION AND SENTENCE ARE AFFIRMED.
MARCUS, J., concurs.
WATSON, J., concurs but would find the evidence in Assignment of Error # 9 too remote in time.
CALOGERO, J., dissents. Assignment of Error # 10 is meritorious, in my opinion.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The issue is very close on whether the exclusion of the evidence that defendant's wife had attempted to run over him with a car five years earlier was harmless beyond a reasonable doubt.[1] Irrespective of that issue, however, I believe that the conviction should be reversed because of the admission of the testimony concerning the wife's out-of-court declaration that she believed her husband would kill her if she left him. The actual impact of this evidence was to inform the jury that the wife was of the opinion (an "opinion" presumably based on unspecified past acts) that defendant would kill her with no provocation (or justification) except her attempt to leave him.
I disagree with the majority that such evidence was admissible as tending to prove the subsequent conduct of the declarant (that her acts at the time of the killing were of a defensive nature because she feared defendant). There is a great danger that the jury mistook the evidence as probative of the conduct of the defendant (that he killed his wife without justification when he attempted to leave her). The logical implication of the evidence is that defendant acted aggressively (and therefore not defensively, as he claimed). This was the issue in the case, since defendant did not deny killing his wife.
The real problem is relevance. Evidence of the wife's out-of-court statement reflecting her state of mind (that is, her opinion concerning her husband's future conduct in the event that she left him) was at best only marginally relevant to the jury's determination of the critical issue in this case: which of the two was the aggressor. The problem with such evidence is that it appears to untrained jurors to prove something which it does not really tend to prove (defendant's conduct, as opposed to his wife's state of mind). The disputed evidence in this case probably appeared to the untrained jurors to be directly probative of the fact that defendant killed his wife when she attempted to leave him.[2]
*464 When marginally relevant evidence has little or no probative value and has a substantial prejudicial effect, then the evidence must be excluded.[3] Since the prejudicial effect of the wife's out-of-court statement (its appearance of proof that defendant killed without justification) greatly outweighed any slight probative value (any tendency to prove the wife's fearful state of mind), the evidence should have been excluded.
NOTES
[1] The defendant argues in his brief to this court that there is a double hearsay problem because the basis of Gloria Martin's statement to Mrs. Parker was a threat made by the defendant to Gloria Martin. We do not consider this issue because the testimony in the record does not establish a double hearsay problem. There are other possible explanations of why Gloria Martin believed the defendant might kill her.
[2] The time at which the victim indicated her state of mind sought to be proved is not evident from the record. Defense counsel was not precluded by the trial court's ruling from establishing the amount of time involved or the weight that should be given to the evidence. The principle that such time considerations generally go to the weight of the evidence rather than its admissibility can be seen by analogy in our statements that the distance in time of a prior threat by the victim against the defendant does not make the threat inadmissible in support of the defendant's self-defense claim but simply goes to the weight of the threat as evidence. See State v. Thibeaux, supra.
[1] The trial judge refused to permit defendant to testify concerning this incident. The majority concludes that the exclusion of this evidence was harmless error because the incident was remote and because there was other evidence that the wife had recently threatened defendant with a gun.

Evidence of the attempt by defendant's wife on his life could have been extremely significant to show (1) that the wife had a violent disposition of long standing; (2) that the wife had actually attempted to kill defendant, which is much more significant than the recent threat to kill him; and (3) that the wife's recent threat to kill was not a single isolated incident, but was a typical display of her violent disposition. However, since the real issue was defendant's credibility (and the excluded evidence consisted of the testimony of the defendant himself rather than the testimony of another witness), perhaps one could conclude that the jury had no more reason to believe the defendant's testimony as to the remote attempt on his life than his other testimony regarding her more recent threat to kill him.
[2] Of course, the prosecution probably wanted to introduce the statement for that very purpose.
[3] The majority does not suggest that the out-of-court statement was admissible hearsay, that is, that it was admissible to prove the truth of the assertion (that defendant would kill his wife if she left). Arguably, if the Legislature had enacted an "omnibus" hearsay exception such as Fed. R.Evid. 803(24) and 804(b)(5), leaving to the courts the perogative to admit hearsay not falling within the traditional exceptions but having equivalent circumstantial guarantees of truthworthiness and reliability, such a statement might qualify as admissible hearsay. Nevertheless, it was not admissible hearsay under present Louisiana law, and, as "non-hearsay", its probative value was greatly outweighed by its prejudicial tendency to prove something it was not admissible to prove.