WILLIAMS, Judge.
Defendant Aldo Garcia was convicted by a judge of second degree murder, a violation of La.R.S. 14:30.1. He was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence.
Defendant assigns two errors as the basis for this appeal: (1) failure of the trial judge to grant a directed verdict in his favor at the close of the prosecution’s evidence on the ground that insufficient evidence to sustain a conviction was introduced, and (2) there was insufficient evidence contained in the record to sustain a conviction for second degree murder. These two errors constitute the same argument.
FACTS:
At trial, the state produced the following facts. Decedent Donald Saxon was found stabbed to death in the early afternoon of August 20,1982. Witnesses at a bar in the French Quarter testified that Saxon had come into the bar for a few beers at about 8:00 or 8:30 on the morning of August 19th. He met defendant Garcia in the bar, and the men talked for approximately 15 minutes and left together. Shortly thereafter, the two men returned, ordered another drink, but left again afterwards. When Saxon did not report to work as he should have on the morning of the 20th, a co-worker found him stabbed to death.
Dr. Monroe Samuels, who did the autopsy on the decedent, testified that all the wounds were on Saxon’s left side. There were five wounds, including a three inch wound in the lower abdomen through which decedent’s intestines protruded, and a fatal wound in the back. Samuels could not testify that the position of the wounds and the type of wounds were inconsistent with self defense, and stated during examination, that they could have occurred during an aggressive attack as well as during self defense.
Other medical testimony indicated that there were no positive readings for seminal fluid or spermatozoa in samples taken from the victim, although the lapse in time before the tests were taken could have resulted in a negative reading. Blood analysis was unavailable because no blood had been left in the body, although an analysis of the bile contained in the victim’s body did not detect the presence of alcohol or any commonly abused drugs. Samuels testified that the decedent did not have an ulcer and had had a heart attack some time in the past, more than six months prior to his death.
The police officers who investigated the incident all testified that the apartment was messy, but there was no sign of struggle or of ransacking. Nothing appeared to have been stolen from the apartment; Saxon’s wallet was still there as well as a radio and television.
One week after the crime, a special agent for the F.B.I. based in Omaha, Nebraska received a phone call from Ms. Searcy concerning the surrender of Garcia for a murder committed in New Orleans. The F.B.I. met defendant at the Searcy home and advised him of his Miranda rights. He *147 gave a statement. He was later extradited to Louisiana.
At trial, the defendant testified in his own behalf. Garcia does not have a history of violent crimes, although he apparently has been convicted of embezzlement. He has a degree in hotel and restaurant management from Boston University. He testified that he met Saxon at the lounge in the French Quarter and walked with him for a short time to go a delicatessen and then return to order another drink. They then went to Saxon’s apartment where Saxon performed oral sex upon Garcia. Garcia testified that Saxon then gave him two pills to take, and he fell asleep, fully clothed. Garcia testified that he was awakened by Saxon sitting on top of him, pressing a knife to his throat. Garcia testified at this point that he was lying nude on the bed. He said that in the ensuing struggle he stabbed Saxon in self defense. He showered, covered the body, and took Saxon’s car keys and drove his car to a truck stop in Slidell where he abandoned it. He hitchhiked to Atlanta and then Omaha where Ms. Searcy lived. It was there that he had Ms. Searcy contact the F.B.I.
The appellant contends that the prosecution failed to introduce sufficient evidence to rebut his assertion that he killed Saxon in self defense.
Once a defendant raises the issue of self defense, the burden of proof shifts and the state must establish beyond a reasonable doubt that the defendant did not act in self defense. State v. Lynch, 436 So.2d 567 (La.1983). In reviewing whether the state has carried this burden, we must consider the evidence presented at trial in the light most favorable to the prosecution and find that any rational trier of fact could have found the defendant guilty beyond any reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982). Because this is a conviction based upon circumstantial evidence, the evidence presented at trial must exclude every reasonable hypothesis of innocence. La.R.S. 15:438; State v. Shapiro, 431 So.2d 372 (La.1983). We note that this is not a stricter standard of review than is employed in other cases, but rather is simply a component of the reasonable doubt standard. State v. Wright, 445 So.2d 1198, 1201 (La.1984).
In her reasons for judgment, the judge relied upon Saxon’s physical condition: he was 63 years old, walked with a cane, wore glasses and had a “handicapped” license plate for his car. There is some evidence presented at the trial to indicate that he may have been a diabetic, although this was not determined during the autopsy. The trial court also relied upon photographs of the crime scene, indicating that there was no sign of a struggle. The trial judge also gave great weight to the negative readings on the oral and rectal swabs for seminal fluid and spermatozoa, although the technician who analyzed the tests stated that a negative reading could have resulted because of the passage of time.
Finally, the trial court noted that Garcia had prior convictions and stated that when Garcia contacted the F.B.I. in Nebraska he gave the agents an alias to cover up these convictions. The two F.B.I. agents testified uncontradictorily, however, that Garcia told them his real name, as well as his alias he had used since his conviction eight years prior. Nothing in the record indicates that defendant tried to conceal who he was or that he had prior convictions.
The trial judge also stated “[t]he wounds on the body of the decedent are of such magnitude and severity and are placed such that the testimony of the defendant as to his claim of self defense is not only improbable but impossible.”
We must review the evidence presented at trial in order to determine whether the trial court reasonably rejected defendant’s assertion of self-defense. We have encountered difficulty in this assessment because, *148 as noted above, the trial court relied upon facts that have a questionable basis. Although the judge stated that the wounds on the victim’s body could not have been caused in self defense, the state’s witness, Dr. Samuels, testified that the wounds could possibly have occurred during self-defense. Also, the judge found that the photographs of the bed on which the body was discovered showed no signs of a struggle whatsoever. The photographs, however, are, at best, ambiguous: the sheets are somewhat rumpled and a corner of one of the sheets has been pulled back, exposing the mattress.
In State v. Captville, 448 So.2d 676 (La.1984), the Louisiana Supreme Court held:
“When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant’s own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt.”
Id. at 680.
In this case, the trial court rejected the only hypothesis of innocence presented by defendant. Because there are no other hypotheses which raise a reasonable doubt, our review is restricted to consideration of whether the trial court’s rejection of self-defense was reasonable.
We reluctantly conclude that the trial judge’s decision was in error. Because the trial judge made several erroneous statements of fact upon which she relied, we cannot find that her decision was reasonable. Had these mis-statements been on relatively minor facts, we might have been able to find that the verdict nevertheless was reasonable. The wrong assumptions, however, are crucial and go to the very heart of the questions of defendant’s guilt or innocence. The judge’s misplaced reliance on improper findings of fact make it impossible for us to hold that the verdict of guilty was reasonable under the circumstances.
For these reasons, the decision of the ' trial court finding defendant guilty is REVERSED.
REVERSED.
SCHOTT and ARMSTRONG, J., concur,