483 So.2d 953 (1986)
STATE of Louisiana
v.
Aldo GARCIA.
No. 85-K-1457.
Supreme Court of Louisiana.
February 24, 1986.
Rehearing Denied March 27, 1986.
*954 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Michael E. McMahon, Asst. Dist. Atty., for plaintiff-applicant.
Calvin Johnson, Michael S. Gallagher, Supervising Atty., Chris Randall, Loyola Law Clinic, New Orleans, for defendant-respondent.
MARCUS, Justice.
Aldo J. Garcia was indicted by the grand jury with the second degree murder of Donald B. Saxon, in violation of La.R.S. 14:30.1. After a bench trial, defendant was found guilty as charged and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant appealed, contending that there was insufficient evidence to support the conviction, specifically, that the state did not carry its burden of proving beyond a reasonable doubt that the homicide was not committed in self-defense. The court of appeal reversed, finding that the state had not met its burden.[1] Upon application by the state, we granted a writ of certiorari.[2]
On August 20, 1982, Donald Saxon, age 63, was found in his apartment, stabbed to death with a large kitchen knife. Witnesses at the "Fourth Time Around," a bar in the French Quarter, testified that Saxon had come into the bar between 8:00 and 8:30 in the morning on August 19th. Saxon, who wore glasses, walked with a cane, and drove a car with a handicapped license plate, was an auditor for a hotel during the night shift. He frequently went to the "Fourth Time Around" after work for beer. On August 19th, Saxon met the defendant, Garcia, in the bar. They talked for about fifteen minutes, left the bar for about fifteen minutes, and then returned and ordered more drinks. Shortly thereafter, they left in Saxon's car. When Saxon did not report to work, his co-worker became concerned because Saxon was as "regular as clockwork." The co-worker gained entrance into Saxon's apartment and found his body on the bed, covered with a sheet, clad only in socks, with a knife protruding from his back.
Dr. Monroe Samuels, who did the autopsy on Saxon, testified that there were five wounds, all on Saxon's left side. The wounds included a three-inch cut in his lower abdomen through which Saxon's intestines protruded, superficial cuts on his left hand, left knee, and in the mid-line of his back, and the fatal wound which was in Saxon's back beneath the left armpit, and which penetrated the left lung and the pulmonary artery. Dr. Samuels speculated that the first wound was the one in the *955 abdomen, followed by the wounds on the hand and leg, followed by the wound at the mid-line, with the killing wound under the arm in the back. The doctor testified that these wounds could have occurred during an aggressive attack, as well as during self-defense. Dr. Samuels further stated that the autopsy revealed that Saxon had suffered a heart attack, probably more than six to nine months before his death.
Other medical testimony revealed that there were negative readings for seminal fluid and spermatozoa in samples taken from Saxon, but that the lapse of time before the tests were taken could have resulted in the negative readings. Blood analysis was unavailable because there was no blood left in the body. An analysis of the bile in Saxon's body, however, detected no commonly abused drugs or alcohol. None of the witnesses at trial had ever seen Saxon drink hard liquor or take drugs.
The police officers who investigated the incident all testified that the apartment was messy, but that there was no sign of a struggle or of ransacking. Blood was found only on the bed. A pillow was found under Saxon's right leg, and another pillow was found under his left arm. Saxon's glasses were on the floor on the side of the bed, sitting on a Kleenex box, and his cane was leaning against the wall. A wallet was recovered from the scene. When questioned as to whether there was any money in it, Officer Chong answered, "No, I don't believe so...."
One week after the incident, a special agent for the F.B.I. based in Omaha, Nebraska, received a telephone call from a Ms. Searcy, a seventy-two year old woman, who said that Garcia wanted to turn himself in. Two special agents of the F.B.I, met Garcia at the Searcy home. Garcia identified himself as Aldo Garcia, but gave the officers a billfold with the identification in it of Richard Barney. He explained that he had been using that name as an alias for several years.[3] Garcia was advised of his Miranda rights, and he gave a statement. Later, he was extradited to Louisiana.
At trial, Garcia, age thirty-five, testified in his own behalf. He stated that he had arrived in New Orleans in the beginning of August, 1982. He worked loading and unloading trucks, but did not rent an apartment to live in. Garcia further testified that he met Saxon for the first time at the lounge in the French Quarter. After talking a few minutes, they left a short time to go to a delicatessen, and then returned for another drink. Saxon invited Garcia to stay with him a few days, and Garcia accepted the invitation. They then went to Saxon's apartment where Saxon performed oral sex on Garcia. Garcia testified that Saxon gave him two pills to facilitate his falling asleep. According to Garcia, he was awakened by Saxon's sitting on top of him, naked, holding a knife to his throat, threatening to kill him. Garcia testified that he had fallen asleep with his clothes on, but now found himself naked. According to Garcia, as he tried to get the knife away from Saxon, it went into Saxon's stomach, whereupon Saxon choked him. Garcia then stabbed Saxon twice in the back. Garcia testified that he covered Saxon with a sheet, and took a shower because he was "covered with blood." He did not clean up the apartment. Garcia then took Saxon's car keys and drove the car to a truck stop in Slidell where he abandoned it. From Slidell, he hitchhiked to Omaha where Ms. Searcy lived. Although, at trial, Garcia denied being under the influence of drugs or alcohol at the time of the homicide, one of the F.B.I, agents who took Garcia's statement in Omaha, Nebraska, testified that Garcia told him that he was under the influence of "ascid [sic], speed and alcohol" when he stabbed Saxon. The other agent testified that Garcia stated that he was "high" at the time of the homicide. Garcia stated at trial that he fled the scene because he was scared and did not know anyone in New Orleans. Further, because of his past convictions, he was concerned about being tried in Louisiana. Twice, Garcia had been convicted of embezzlement.
*956 The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Wright, 445 So.2d 1198 (La.1984).
In addition to these standards, when a defendant claims self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Matthews, 464 So.2d 298 (La.1985); State v. Martin, 458 So.2d 454 (La.1984); State v. Lynch, 436 So.2d 567 (La.1983); State v. Patterson, 295 So.2d 792 (La.1974); State v. Ardoin, 128 La. 14, 54 So. 407 (1911). La.R.S. 14:20 reads in pertinent part as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger....
There is no issue as to whether Garcia killed Saxon. The only question is whether Garcia acted with justification. Thus, the relevant inquiry on appeal in the instant case is whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-defense. Jackson v. Virginia, supra; State v. Matthews, supra; State v. Lynch, supra.
In the instant case, the victim was sixty-three years old, handicapped and had suffered a heart attack in the past. He was a dependable employee who did not drink hard liquor or take drugs. By contrast, Garcia was thirty-five years old and engaged in manual labor. He was an itinerant worker and a convicted embezzler, who used a number of different aliases. He had no place to stay in New Orleans. According to the F.B.I, agents, Garcia admitted that he was on drugs at the time of the homicide. Though Garcia contends that Saxon was the aggressor, Saxon's glasses, which he always wore, were found at the side of the bed on a Kleenex box. Though Garcia contends that there was a violent struggle and that he became "covered with blood," no blood was found anywhere in the apartment other than on the bed. Garcia stated that he had not cleaned the apartment. Garcia testified that he went to bed with his clothes on but woke up naked; nevertheless, he was not awakened until Saxon straddled him. Further, there is no evidence that Garcia himself sustained any injuries. The fact that Saxon was found with a pillow under his right leg and another under his left arm seems inconsistent with Garcia's contention that Saxon was the aggressor. Garcia admitted that immediately after the incident, he failed to call for medical assistance or the police. Instead, he showered, took Saxon's car keys, and left in Saxon's car, ultimately hitchhiking to Nebraska. Further, Saxon's wallet was found apparently with no money in it. Though the initial wound in the abdomen was three inches long, causing the victim's intestines to protrude, Garcia contends that it was necessary to inflict four more wounds on the victim, who was more than twenty-five years his elder, in order to defend himself. Also, though *957 Garcia contends that he was lying on his back with Saxon straddled on top of him, facing him, the fatal wound was inflicted in Saxon's back, and this incision was of such intensity that it penetrated Saxon's left lung and pulmonary artery.
Under the circumstances presented, we find that the state met its burden of proof, that is, viewing the evidence in the light most favorable to the prosecution, a rational fact-finder could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. The court of appeal erred in holding otherwise.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed, and defendant's conviction and sentence are reinstated.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
By proving beyond a reasonable doubt that defendant killed Saxon with the specific intent to kill or inflict great bodily harm, the state met the only burden of proof imposed by the Fourteenth Amendment (to prove every essential element of the crime beyond a reasonable doubt).
There is a logical distinction between those defenses which actually defeat an essential element of the crime and those which present exculpatory circumstances that defeat culpability (even though the state has proved every element of the crime beyond a reasonable doubt). State v. Cheatwood, 458 So.2d 907 (La.1984). Justification defenses such as self defense are affirmative defenses because they do not negate any essential element of the crime. Generally, the party pleading an affirmative defense has the burden of proof. The burden of proving self defense by a preponderance of the evidence therefore should be on the defendant. At least the defendant should have the initial evidentiary burden of producing evidence to create a reasonable doubt before the state has the burden of persuasion to negate the defense. See W. LaFave and A. Scott, Criminal Law § 8 (1972); Model Penal Code § 1.12 (1985).
Here, the trier of fact rejected defendant's version of the incident. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). The evidence, viewed in the light most favorable to the prosecution, does not suggest any hypothesis which is sufficiently reasonable that a rational juror could not "have found proof of guilt beyond a reasonable doubt". Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979).
NOTES
[1] 470 So.2d 145 (La.App. 4th Cir.1985).
[2] 477 So.2d 91 (La.1985).
[3] At trial, he admitted to using different aliases at various times.