|, PLOTKIN, Judge.
PROCUDURAL AND FACTUAL HISTORY
Pamela Clark was charged by bill of indictment on September 12, 1996, with second degree murder,, a violation of La. R.S. 14:30.1. At her arraignment on September 16,1996 she pleaded no't guilty. The trial court denied the motion to suppress the identification after a hearing on February 19, 1997. After trial on March 26, 1997, a twelve-member jury found her guilty as charged, and she was sentenced on April 18 to life imprisonment without benefits. She appealed, and this court reversed her conviction and sentence and *307 remanded the case for a new trial.[1] State v. Clark, 97-1757 (La.App. 4 Cir. 4/7/99), 732 So.2d 138.
On January 11, 2000, Ms. Clark was tried and a twelve-member jury found her guilty as charged. She was sentenced on January 20, 2000, to life imprisonment without benefits of parole, probation, or suspension of sentence. Her motion to reconsider the sentence was denied, and her motion for an appeal was granted.
l¡,At trial Sergeant Charles Watkins testified that on July 29,1996, he investigated a homicide occurring at 1413 North Claiborne Avenue. Leroy Seabrook was stabbed once in the chest and he died shortly thereafter at Charity Hospital. Pamela Clark was arrested that day in the 1200 block of Marigny Street, near her home. The Sergeant did not notice any injuries to Ms. Clark nor did she request any medical attention.
Mr. Tommy Nguyen, the proprietor of the Manchu Food Store, testified that he was working behind the cash register on July 29, 1996, about noon, when Pamela Clark entered the store. A few minutes later, Leroy Seabrook, a regular customer, came in. Mr. Nguyen heard Seabrook say “something bad” to Clark and realized they were arguing; he hurriedly checked Seabrook out so that he would leave the store. When Seabrook left the store, Clark followed him. Mr. Nguyen did not see Seabrook hit Clark and he was not aware of what happened outside of his store.
Walter Lee James testified that he and Mr. Seabrook had been driving around since about 9 a.m. that day. Mr. James admitted drinking beer, but he said Mr. Seabrook had not had any alcoholic drinks or drugs while they were together. James stopped at the Manchu Food Store on the corner of North Claiborne and Esplanade Avenues, and Mr. Seabrook went into the store to buy oil for James’s car. After a few minutes, Mr. Seabrook emerged from the store and walked toward the car followed by Willie Davis and Ms. Clark. As Mr. Seabrook got into the car, he said, “I am hit.” Mr. Seabrook’s feet were outside of the car and Willie Davis 13tried to slam the car door on Seabrook’s legs. Mr. James did not see who stabbed Mr. Sea-brook. Mr. James drove to Charity Hospital where he left Mr. Seabrook in the emergency room. Sometime later, a police officer showed Mr. James a photo line-up and Mr. James selected Ms. Clark’s picture. James said that he had no weapons in the car and that Mr. Seabrook had nothing under the seat.
Dr. William P. Newman, an expert in forensic pathology, testified that Larry Seabrook died as a result of a stab wound, which pierced the right atrium of his heart and his aorta. A heroin derivative was found in his blood. The doctor could not determine whether the heroin derivative was the result of morphine given to Sea-brook in the hospital or whether he had used heroin on the street.
Deloris Clay testified that as she got off the bus on July 29, 1996, at the corner of Esplanade and Claiborne Avenues, she saw Pamela Clark, known to her as “Chicago,” with Larry Seabrook, known to her as “Scotty,” Willie Davis, and Clark’s friend, Linda Semeion. Clark, Davis and Semeion were circling Mr. Seabrook, whose back was to the door of the store. The two women were “motioning, whooping and hollering.” Mr. Seabrook walked to the car where Walter James was waiting and the three followed him. When Seabrook opened the car door and stood momentarily with his back to the passenger door, the three people “huddled over him.” When asked what Mr. Seabrook was doing, Ms. Clay replied, “he was trying to avoid the confrontation that was happening. He was just trying to get in *308 the ear.... ” Ms. Clay was standing in the parking lot while she was observing the scene and nothing blocked her view of the passenger side of the Rear. She never saw Mr. Seabrook hit Pamela Clark. She did see Ms. Clark make a “jabbing” motion towards Mr. Seabrook. At the same time Linda Semeion backed away with the stroller she was pushing. Mr. Seabrook fell into the passenger side of the car. When Pamela Clark turned around, Clay saw that she had a black-handled kitchen knife in her hand. Willie Davis slammed the car door against Mr. Seabrook’s leg several times. Pamela Clark, Linda Sem-eion and Willie Davis then walked on Esplanade Avenue toward the river. The car moved off on Esplanade Avenue.
Willie Davis, the common-law husband of Pamela Clark, testified that he had lived with Clark for eight or nine years and that they have two children. Mr. Davis said that on July 29, 1996, Ms. Clark, their two young boys and he had been together all morning. Ms. Clark and the younger child, who was in a stroller, went into Manchu’s Food Store while Mr. Davis and the older boy stayed outside. When Ms. Clark came out of the store, she motioned for Mr. Davis to come to her. She was arguing with a man, who said, “hold up, bitch, I got something for you.” The man walked to a parked car and Clark followed him. He got into the passenger’s side and reached down under the seat; Davis saw him open up a small switchblade knife. In order to stop him from getting out of the car with the knife, Davis slammed the door against his legs. Davis testified that he never saw Ms. Clark with a weapon nor did he see her stab Seabrook. When he and Clark walked away from the parking lot, he did not know Seabrook had been stabbed.
l.sOn cross-examination, Davis was asked if he told police that Seabrook had a knife and he answered affirmatively. However, when he was asked to review his statement to the police, he admitted there was no mention of his seeing Seabrook with a knife. The tape of Davis’s statement to the police was played for the jury. There was also contradictory testimony as to Davis’s seeing Ms. Clark stab Seabrook. He testified at trial that he did not witness the stabbing. However, in his statement to the police, he said that Clark “rushed over [to the car and ] hit him [Seabrook] and her [and] Semeon [sic] broke out running.”
Pamela Clark took the stand and admitted that she has been convicted of prostitution in Chicago and New Orleans, for possession of Talwin, possession of PCP, armed robbery, simple robbery and theft. She also admitted to having used five aliases. She said that on July 29, 1996, she was leaving the food store when Mr. Seabrook blocked the door and began calling her names like “bitches and whores.” She answered, “you’re [sic] mammy a bitch.” Ms. Clark testified that she had never seen Mr. Seabrook before that encounter. She told Mr. Davis what happened. Mr. Davis asked Seabrook why he hit Clark. Mr. Seabrook answered, “I’m going to show you why I hit that bitch, in a few minutes.” She saw him reach under the seat of the car and bring out a knife. Clark “panicked” and “got a knife and I come up to the car and I stabbed him in the shoulder one time.” She said she found the knife on the ground. She explained that she was not really concerned for herself, but only for her two babies. Clark found out that Mr. Seabrook died when the police officers came to her house several hours later. When confronted with |fiher testimony taken at prior proceedings, she admitted she had said she did not see Mr. Seabrook with a knife.
DISCUSSION
In a single assignment of error, Clark now argues that the evidence was insufficient to support the conviction for second-degree murder. She maintains that the evidence was insufficient to prove she had specific intent to kill or to inflict great bodily harm and she was simply trying to defend herself.
*309 When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. See La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable 17doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
La. R.S. 14:30.1 defines second-degree murder as “the killing of a human being: ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm.” Specific criminal intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Specific criminal intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Maxie, 93-2158 (La.4/10/95), 653 So.2d 526, 532.
A homicide is justifiable when committed in self-defense by one who reasonably believes that she is in imminent danger of losing her life or receiving great bodily harm and that the killing is necessary to save herself from that danger. La. R.S. 14:20 A(l). When a defendant claims self-defense, the State has the burden of establishing beyond a reasonable doubt that she did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986); State v. Matthews, 464 So.2d 298 (La.1985); State v. Brumfield, 93-2404 (La.App. 4 Cir. 6/15/94), 639 So.2d 312; State v. Dozier, 553 So.2d 911 (La.App. 4 Cir.1989), writ denied, 558 So.2d 568 (La.1990).
|sPamela Clark admitted that she inflicted the stab wound to Larry Seabrook that caused his death. However, she claims he was reaching for a weapon and she stabbed him to prevent his harming her children or herself.
In considering Clark’s self-defense argument, we must consider whether she had a reasonable belief that she was in imminent danger of losing her life or receiving great bodily harm and whether the killing was necessary, under the circumstances, to save her from that danger. State v. Brumfield, 93-2404 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316. “Although there is no unqualified duty to retreat, the possibility of escape is a factor in determining whether or not a defendant had the reasonable belief that deadly force was necessary to avoid the danger.” Id.
Although Clark maintains that Seabrook had made threats against her and then took out a knife, none of the other witnesses saw Seabrook with a knife, and the witnesses—other than Davis—described Clark as the aggressor. Both James and Clay testified that Seabrook was wounded before he collapsed into the car. Under these circumstances, the State has met its burden of proving that Clark did not act in self-defense when she stabbed Seabrook. Obviously, the jurors discounted Clark’s testimony that Seabrook pulled out a knife. Such credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the jury’s trial function. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). *310 There is, therefore, no evidence that Clark reasonably believed that she was in imminent danger of losing her life or receiving great | abodily harm when she stabbed Sea-brook. Accordingly, this argument is without merit.
The defendant also argues that Clark’s single blow to Seabrook is not compelling evidence of her specific intent to kill, and cites cases in which this court has found specific intent after numerous stab or bullet wounds. However, in a somewhat similar case, the Louisiana Supreme Court affirmed a second-degree murder conviction where the defendant and victim had been arguing, and the defendant pulled out a knife and fatally stabbed the victim. As in the case at bar, the victim had not attacked the defendant with a weapon, and the defendant admitted to the stabbing. The Supreme Court held that under these circumstances, a rational trier of fact could have found the defendant had specific intent to kill or commit great bodily harm. State v. Graham, 420 So.2d 1126, 1128 (La.1982).
We hold that the verdict of guilty of second-degree murder is clearly supported by the evidence in this case. Pamela Clark admitted she stabbed Larry Sea-brook, and he died of one stab wound. Pamela Clark and Willie Davis offered testimony in contradiction to that of other witnesses, and in contradiction to earlier statements they had given. A rational trier of fact could certainly have found from the evidence that defendant had the specific intent to kill or commit great bodily harm and that the State has proven these essential elements of the crime of second degree murder beyond a reasonable doubt.
^CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.

AFFIRMED.

. The case was reversed and remanded because a person chosen for the jury had mistakenly been excused, and a person who had been excused had been seated, heard evidence and was seated in the jury room after the jury retired for deliberations.