BYRNES, Judge.
A twelve member jury found Michael Thomas guilty of second degree murder, a violation of R.S. 14:30.1, and Stanley Thomas and John Thomas were found guilty of manslaughter, violations of R.S. 14:31. The trial court sentenced Michael Thomas to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. Stanley Thomas was sentenced to ten years at hard labor and John Thomas was sentenced to five years at hard labor. All three appealed. We affirm.

STATEMENT OF THE FACTS

On New Year’s Eve 1990, Joyce Brum-field, her husband Stanley Brumfield, their daughter Nicole, and Nicole’s friend Demetrius Franklin were watching a Saints game at the Brumfields’ home. At the conclusion of the game, which the Saints won, they went outside to celebrate by shooting off firearms. Mr. Brumfield and Demetrius discharged shotguns while Mrs. Brumfield fired a one shot derringer. The four then went back inside the house. Shortly thereafter they heard gunshots outside. They looked outside and saw one of the defendants, Michael Thomas, pulling off in his black Camaro. A car belonging to a relative of Demetrius, which he had been using, had bullet holes in it. After unsuccessfully trying to call the police, Demetrius drove to the Sixth District to report the incident but was told to return in the morning to make a complaint because they were short handed. Demetrius returned to the home of the Brumfields who decided to drive across the river, to Algiers, to the home of Michael Thomas to talk to his mother about the incident. They took the shotguns with them in the vehicle, a Chevrolet Suburban. Mrs. Brumfield had her derringer in her pocket because she had forgotten about it. When they arrived on Bermuda Street where the Thomases lived, Demetrius Franklin, the driver of the Suburban, parked around the corner from the Thomas house. According to Mrs. Brumfield, they parked around the corner because they were scared. According to Nicole Brumfield and Demetrius Franklin, they parked around the corner because there were no parking spaces in front of the Thomas house. Demetrius and Nicole stayed in the Suburban while Joyce and Stanley Brumfield went up to the house. As they reached the door, Joyce remembered she had the pistol and handed it to Stanley who put it in his pocket.
The Brumfields knocked on the door for a few minutes until it was answered by one of the defendants who did not open the door or screen. Joyce Brumfield was unable to identify which brother it was. The Brumfields identified themselves as Nicole’s parents; Nicole and Michael Thomas had gone to school together. For a few minutes the Brumfields argued about the fact that Michael had shot up the car and asked to see the defendants’ mother. Finally the Brumfields turned, left the porch, and were getting ready to walk away when Michael Thomas came out with a “long” gun; the other brothers also came out with guns. Stanley Thomas, armed with a “long” gun, put it in Stanley Brumfield’s face and told them to get away from the area. The Brumfields then began backing up until they turned the corner at which time Joyce Brumfield heard a gunshot. As she was getting into the Suburban, she *471 heard rapid gunfire. Stanley Brumfield was shot while he was getting in the vehicle; Nicole, Joyce, and Demetrius Franklin were struck by bullets when they were already in the vehicle. After the shots were fired, Demetrius pulled off, with Stanley Brumfield still partially out of the ear, and drove across the Mississippi Bridge to Charity Hospital. At Charity, it was discovered that Stanley Brumfield had died. The cause of death was determined to be gunshot wounds that entered the back of his body. Nicole Brumfield had been shot in the head, necessitating surgery to remove the bullet and resulting in her having a frontal lobotomy.
At trial Ronald Ruiz, Jr., Ronald Ruiz, Sr., and Ann Ruiz testified about the shooting. The Ruizes lived next door to the Thomas family. Ronald Jr., age thirteen, testified that at approximately 12:30 a.m. a woman went to the Thomas house and asked for Michael. Ronald was looking through the window as the man and woman on the Thomas porch talked to a man, who sounded like Michael Thomas. The Brumfields kept asking why their house had been shot up; Michael said he did not do it and to get off the porch. Finally the Brumfields backed down and went around the corner. Ronald stated that he did not see the shooting but did hear a single shot, then shots like a pack of firecrackers.
Mrs. Ruiz testified that she heard an argument at the Thomas house, looked out of the window, and saw the three Thomas brothers. One of them was in the middle of the street with a gun. She saw a flash from the gun when it went off, then all three brothers went down the street. Mrs. Ruiz was unable to say which brother shot the gun first but that it looked like the smallest. After the first shot, Mrs. Ruiz ran to call 911.
Mr. Ruiz Sr. heard and saw the argument on the Thomas porch. He saw the Brumfields back down the step and walk down the street around the corner until they were out of sight. The Thomas brothers came out of the house; Michael went into the street, raised his hand and fired a gun. The other two brothers then raised their hands up. As Mr. Ruiz and his wife went to the phone to call the police, they heard multiple gunshots.
When the police responded to the phone call from the Ruizes, Officer Louis Martinez of the New Orleans Police Department initially arrived on the scene and interviewed the Ruizes. While he was interviewing them, Ronald Jr. noticed a black and gold Camaro, which he identified as Michael’s car, pull up. Ronald pointed the car out to Officer Martinez who pursued it for five or six minutes until it stopped. Officer Martinez saw three weapons on the dash board of the car. Michael, who had been driving, got out and was frisked by Officer Martinez. Officer Martinez discovered that Michael was wearing a bulletproof vest. Stanley Thomas made a brief statement to Officer Martinez that at approximately 12:15 some unidentified people approached his residence and began firing at him, and he returned gun fire to protect himself. Officer Martinez subsequently conducted a search, with the consent of Bobbi Thomas, the defendants’ mother. With her cooperation Officer Martinez discovered an AK-47 under a bed in the Thomas home.
Stanley later made a statement to Homicide detective Cindy Patterson in which he stated that there had been a knock on his door, he answered it, and found an unknown black male on the porch who started shooting at him. Stanley and his brother John then armed themselves and came out and shot at the person, who ran into a car that was parked across the street. As the car pulled off, Stanley and John chased them.
The defendants did not testify at the trial in this matter. The defense did present evidence regarding a shooting incident at the Thomas home in November 1990, approximately thirty days prior to the instant offenses. Bobbi Thomas testified that on November 27th she heard loud knocking on her door. A voice inquired as to whether “June” was there, then “Stan”, then Stanley. Ms. Thomas awoke her son John and told him that someone was at the door acting strangely. John told Ms. Thomas to *472 get her gun, then he went to the front door with it. Ms. Thomas went to the back of the house to call the police at which time she heard gunshots. She later discovered bullet holes in the front of her house. Officer A1 Bowman testified that on November 27, 1990 he was working a paid detail on Elisa Street, approximately two blocks from Bermuda street where the Thomases lived, when he heard several gunshots. He called the incident in on his police radio then ran to the intersection of Elisa and Bermuda where he saw three armed people in the intersection shooting at the Thomas house. One of the men fired at Officer Bowman; the perpetrators were arrested shortly thereafter a few blocks away. A search of the car in which the men were apprehended revealed two jugs of gasoline and matches as well as several guns. One of the guns recovered, a shotgun, was registered to Demetrius Franklin who testified that it had been stolen from him.

ERROR PATENT REVIEW

A review of the record for errors patent reveals only one. On May 30, 1991 defense counsel for Michael Thomas filed a motion for new trial which was denied by the trial court. The court then immediately sentenced him to life imprisonment without the benefit of probation, parole, or suspension of sentence. The minute entry does not reflect that the appellant, Michael Thomas, waived his right to a twenty-four hour delay between the denial of his motion for new trial and his sentencing. LSA-C.Cr.P. art. 873. In State v. Augustine, 555 So.2d 1331 (La.1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant’s sentence if the defendant attacks his sentence, even though the defendant fails to specifically allege this failure as an error on appeal. However, the Fourth Circuit, in State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991), held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal. Therefore, in the present case where no error is raised as to the defendant’s sentence, the failure of the trial court to observe the delay period is harmless error.

ASSIGNMENT OF ERROR NUMBER 1

In the first assignment of error, the appellants contend that the evidence was insufficient to sustain their convictions in light of their self-defense argument. They argue that the State failed to establish beyond a reasonable doubt that they did not act in self-defense.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. LSA-R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
The defense of justification is set forth in LSA-R.S. 14:18, which provides in part:
The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based upon that conduct. This defense of justification can be claimed under the following circumstances:
[[Image here]]
*473 (7) When the offender’s conduct is in defense of persons or property under any of the circumstances described in Articles 19 through 22.
LSA-R.S. 14:20(1) defines a homicide as justifiable:
When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
In addition, LSA-R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
In State v. Matthews, 464 So.2d 298, 299 (La.1985), the Court set forth the appropriate standard for a review of a claim of justification:
When the accused asserts justification as a defense to murder, the state bears the burden of proving beyond a reasonable doubt that the killing was not justified. State v. Lynch, 436 So.2d 567 (La.1983); State v. Patterson, 295 So.2d 792 (La.1974). On review, the question, therefore is not whether a rational fact-finder could have found that the state had proved the essential elements of the offense beyond a reasonable doubt. The applicable standard is whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in defense of others. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Faulkner, 441 So.2d 721 (La.1983); State v. Lynch, supra.
All of the defendants in this matter were charged with first degree murder. The jury found Michael Thomas guilty of second degree murder, a violation of LSA-R.S. 14:30.1 which provides in pertinent part that:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm.
John Thomas and Stanley Thomas were found guilty of manslaughter, a violation of LSA-R.S. 14:31. Manslaughter is defined as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; ...
The appellants concede that one man was killed and that three people were wounded and that the defendants fired upon these people. They argue however that the jury did not properly consider the evidence that Stanley Brumfield was armed at the time he was shot, that there were two weapons inside the Suburban being driven by the victims, and that there was evidence that shots were fired from inside the vehicle.[1]
There is no question that there was evidence that the homicide victim was armed. However, there was no evidence that he ever drew his weapon or threatened the defendants with it. Furthermore, it was the testimony of two eyewitnesses, Ann Ruiz and Ronald Ruiz Sr., that Joyce and Stanley Brumfield were out of sight and around the corner when Michael Thomas first fired his weapon.
There was ample circumstantial evidence to indicate that the defendants pursued the victims around the corner. This evidence consisted of the testimony of the homicide detective, Cindy Patterson, that there were *474 no shell casings found on the Thomas’ porch or in their yard. All of the shell casings were found near the grocery store on the corner of Bermuda and Elisa Street or around the corner on Elisa. Additional evidence which defeats a self-defense claim consists of the fact that the homicide victim was shot from the back and that the Suburban had multiple bullet holes in the passenger side and the rear. Finally, all of the victims denied that any shots were fired from the Suburban, testimony which the jury apparently found credible. Therefore, it appears that the State sufficiently proved beyond a reasonable doubt that the defendants did not act in self-defense.
The appellants further argue in their first assignment of error that the jury could not reasonably have concluded that John and Stanley Thomas acted in the heat of passion but that Michael Thomas did not. This argument also has no merit. Michael Thomas, according to the testimony of Mr. and Mrs. Ruiz, fired the first shot. It is not unreasonable for the jury to conclude that his brothers reacted to hearing that shot and thus were in the heat of passion when they began firing. More importantly, Michael Thomas was identified as the person who had earlier gone to the Brumfield home and shot at Demetrius Franklin’s car. He was also the only one of the three brothers who was wearing a bullet-proof vest. Clearly, the jury could reasonably conclude that the actions of Michael Thomas were premeditated and that he was not acting in sudden passion or heat of blood.
The appellants’ first assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 2

In their second assignment of error the appellants contend that reversible error was committed by the prosecution when it commented to the jury that “deadly force” can only be used against “deadly force” for a homicide to be justifiable.
The incidents complained of by the appellants occurred during voir dire and during rebuttal closing argument. The first time the prosecutor gave the alleged misstatement, the court informed the jury that it would instruct the jury on the law of self-defense. The next two times, the defense objected to the prosecutor’s misstatements and those objections were sustained by the trial court who gave an explanation that the standard for justifiable homicide was whether there was a reasonable belief under the circumstances to defend against a threat of harm. The defense did not request a mistrial at any of these occasions or otherwise indicate that it felt the court’s action was insufficient to cure any prejudice. During rebuttal argument, the defense failed to object at all.
The defendants’ failure to move for a mistrial or raise a contemporaneous objection precludes review of this issue on appeal. LSA-C.Cr.P. article 841. Furthermore, the appellants do not contend that the trial court gave erroneous instructions to the jury; thus there are no grounds for reversal as the court correctly informed the jury on the standard for a finding of justifiable homicide.

ASSIGNMENT OF ERROR NUMBER 3

In their third and final assignment of error, the appellants contend that the identification of John and Stanley Thomas were tainted, thus highly impermissible and suggestive.[2] In support of their contention, the appellants rely on the testimony of Joyce Brumfield who testified that she was informed, prior to participating in photo line-ups, that the pictures of John Thomas and Stanley Thomas were' included.
The appellants' argument has theoretical merit; however, factually it does not. The testimony of Detective Cindy Patterson was that Joyce Brumfield was unable to identify either John or Stanley in the photo line-ups. Thus there were no pretrial identifications to be tainted. Furthermore, Mrs. Brumfield incorrectly identified the two brothers at trial, again resulting in no identifications at all. Because there were no identifications to suppress, there was no *475 prejudice to the defendants and no grounds for reversal.[3]

CONCLUSION

For the foregoing reasons the convictions and sentences of all defendants are affirmed.
AFFIRMED.

. This evidence consisted of a spent shotgun shell and testimony from a crime lab officer that there appeared to be a powder burn on the inside of the Suburban.

. In the formal specification of error, the appellants include only the identification of John Thomas. However, in the brief itself, the appellants refer to both John and Stanley.

. It should be noted that the record reflects that no pretrial line-ups were held as to Michael Thomas and no other witnesses participated in pretrial identifications of any of the defendants. The record also fails to show that a motion to suppress identification hearing was ever held, presumably because there were no pretrial identifications.