981 So.2d 850 (2008)
STATE of Louisiana, Appellee
v.
Demetrius THOMAS, Appellant.
No. 43,100-KA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
*852 Carey J. Ellis, III, for Appellant.
Demetrius Thomas, Pro Se.
Paul J. Carmouche, District Attorney, Tommy J. Johnson, John F. McWilliams, Jr., Laura O. Wingate Fulco, Assistant District Attorneys, for Appellee.
Before WILLIAMS, DREW and LOLLEY, JJ.
WILLIAMS, J.
The defendant, Demetrius Thomas, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. After a bench trial, the defendant was found guilty as charged. The trial court imposed the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant now appeals. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
On April 12, 2005, Shreveport city workers were mowing the grass alongside Alto Vista Street when they discovered the dead body of Shelby Smith. The workers called the Shreveport Police Department; the responding officers discovered that Smith had suffered four gunshot wounds to the right side of his head. Police contacted Smith's family and determined that Smith had last been seen alive at a Shreveport *853 Circle K store in the early morning hours of Sunday, April 10, 2005. Surveillance video from that store showed that Smith was with a man identified at that time only as "Little D." Smith's vehicle, a Chevrolet Trailblazer with distinctive green paint and chrome wheels, was also missing.
After local television news showed photos of "Little D" and the victim's truck, viewers identified the defendant as the person called "Little D." The defendant voluntarily spoke with the police and admitted that he had been with Smith in the early morning of April 10, 2005. However, defendant said that he had not seen Smith since he dropped defendant off at home on Devaughn Street in Shreveport that Sunday morning. Police later received information from defendant's neighbors that they had seen the victim's green vehicle in defendant's yard during the day on Sunday.
On April 15, 2005, police received consent from the defendant's girlfriend, Johnee Barnes, to search the Devaughn Street residence where they both lived. Once inside, the officers detected a strong smell of blood in a back storage room. The officers left the house, secured the scene and obtained a search warrant. The subsequent search of the premises revealed numerous bloodstains on the floor and walls of the storage room and a quantity of broken auto safety glass scattered outside. Inside the residence, police found the title to the victim's vehicle.
Police questioned defendant again that same day. After being advised of his Miranda rights, defendant chose to speak with the officers. During the tape-recorded interview, defendant admitted to police that he had shot and killed Smith, dumped his body on the side of the road and burned his truck. However, defendant claimed that he had shot Smith in self-defense. According to the defendant, Smith had previously agreed to sell his custom truck to defendant for $4,000.00, but when the two arrived at defendant's house, Smith attempted to rob him of the money. Defendant said that Smith pointed a pistol at him and pulled the trigger, but when the gun misfired they wrestled for control of the weapon and defendant shot Smith. The defendant explained that he dumped the victim's body and burned the truck because he was on parole for another offense and was afraid of the consequences of his actions. Defendant directed police to the wooded area where the victim's truck was located.
Subsequently, defendant was charged with second degree murder. As previously stated, the defendant opted for a bench trial and was found guilty as charged. The trial court denied the defendant's motion for post-verdict judgment of acquittal and sentenced him to serve life imprisonment at hard labor without benefits. This appeal followed.

DISCUSSION
Through an attorney-filed and a pro se assignment of error, defendant contends the state failed to present sufficient evidence to support the conviction of second degree murder. Defendant argues that the state failed to prove beyond a reasonable doubt that he did not act in self-defense.
A reviewing court first considers the issue of sufficiency of the evidence for the reason that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could *854 not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a factfinder's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
According to LSA-R.S. 14:30.1(A)(1), second degree murder "is the killing of a human being: (1) when the offender has the specific intent to kill or to inflict great bodily injury." According to LSA-R.S. 14:10(1), "specific intent" is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Further, the specific intent to kill may be inferred by the trier of fact from the circumstances, such as discharging a firearm at close range to the victim. State v. Wilson, 40,767 (La.App. 2d Cir.8/23/06), 938 So.2d 1111, writ denied, 2006-2323 (La.4/20/07), 954 So.2d 159, cert. denied, ___ U.S. ___, 128 S.Ct. 275, 169 L.Ed.2d 201 (2007).
When self-defense is raised as an issue, the state has the burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Garner, 39,731 (La.App. 2d Cir.9/8/05), 913 So.2d 874, writ denied, 2005-2567 (La.5/26/06), 930 So.2d 19. Self-defense is justification for a killing only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. LSA-R.S. 14:20(B)(1); State v. Dooley, 38,763 (La. App. 2d Cir.9/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.2/18/05), 896 So.2d 30; State v. Cotton, 25,940 (La.App. 2d Cir.3/30/94), 634 So.2d 937. Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. State v. Spivey, 38,243 (La.App. 2d Cir.5/12/04), 874 So.2d 352.
In the present case, Amy Muller, a Shreveport Police investigator, testified that she assisted with the search of defendant's residence following the discovery of the victim's body. Muller stated that during the search she saw bloodstains in the driveway, under the carport and on the back door of the house. In addition, Muller testified that police observed fourteen bloodstains on the floor and walls of the back room of the house.
The defendant chose to testify and admitted that he killed the victim, but claimed that he did so in self-defense. The defendant stated that he sat in the passenger seat of the victim's truck while the victim sat in the driver's seat. Defendant testified that the victim pulled a pistol and told defendant "to give him everything and *855 don't move," referring to the $4,000 in cash that the defendant said that he planned to use to buy the victim's truck. The defendant asserted that when the victim "pulled the trigger and the gun didn't go off I began, that's when I grabbed it, grabbed at the gun, and we began struggling and wrestling over the weapon." Defendant testified that he shot the victim during the struggle. With regard to his actions following the shooting, defendant explained that he was on parole at the time of this incident, that he was afraid of going back to jail and did not know what to do, so instead of contacting the police officer who lived next door to him, the defendant disposed of the victim's body on Alto Vista, burned the victim's truck and threw away the firearm.
On cross-examination, defendant admitted that after the shooting, he dragged the victim's body from the truck into his house and later placed the body back into the truck. Defendant also admitted that he wrapped the body in a burlap blanket along with some pine straw to absorb the blood before leaving the body by the side of the road. The defendant denied that he had a gun and claimed that the murder weapon belonged to the victim. This statement was contradicted at trial by the victim's cousin, Sam Smith, who testified that he had seen defendant armed with a handgun at the Circle K on the night of the murder.
After hearing the evidence, the trial court stated its findings:
Now, this encounter occurred according to the defendant over the s[ale] of the truck or the money for the truck. The defendant subsequently took control of the vehicle after shooting the victim several times, including approximately four shots to the head of the victim, which indicates intent to the Court, the specific intent. The defendant took the body, hid it in the woods. According to the testimony of the defendant he lived next door to a police officer, which should have been the first person contacted by the defendant should there be any truth to the statement of self-defense, yet the defendant chose to cover up the crime, hide the body, attempting to clean up the crime and the evidence and the blood with various cleaning items, none of which gives credibility to the story of the defendant. There is no other evidence that would indicate self-defense to the Court other than the self-serving statement of the defendant. Therefore, based upon the testimony and evidence presented in court, the Court would find the defendant guilty as charged.
The defendant testified that he shot and killed the victim during a struggle that ensued after the victim tried to rob him at gunpoint. However, the physical evidence demonstrates that the defendant shot the victim four times in the side of the head, moved the victim's body from where it rested, drove to a remote area to conceal the body and then burned the victim's truck in a secluded area. Rather than immediately report the incident to the police officer who was his neighbor, the defendant took every possible avenue to conceal the evidence of the shooting. The trial court reasonably exercised its discretion to reject the defendant's tale and find that defendant did not act in self-defense when he shot the victim four times in the head. Thus, the evidence was sufficient beyond a reasonable doubt to prove that the defendant did not act in self-defense and to support the conviction of second degree murder. These assignments of error are without merit.
Pro Se Assignments of Error
The defendant contends the trial court should have suppressed the evidence that the police found at his home. Defendant *856 argues that the search was illegal because a third person, not his girlfriend, was the lessee of the premises where the murder took place, and that only the lessee could lawfully have given police authority to enter the residence.
The record reflects no ruling by the trial court on the defendant's pro se motion to suppress evidence. Nor does the record reflect any evidence that the defendant objected if indeed there was a failure by the trial court to rule on the motion. The failure to object to this alleged error at the time of trial prevents raising the issue after verdict. LSA-C.Cr.P. art. 841; State v. Pratt, 32,302 (La.App. 2d Cir.9/22/99), 748 So.2d 25. Although the defendant's motion was in writing and LSA-C.Cr.P. art. 841(B) provides that the objection requirement shall not apply to the court's ruling on a written motion, the issue here is the absence of a ruling on the motion, not the substance of a particular ruling.
Moreover, the defendant's argument is substantively without merit. When police arrived at the home, the defendant's girlfriend consented to the search and allowed the officers inside the residence. Once inside, the presence of bloodstains and a strong smell of blood in the back room led the police to leave the house and obtain a search warrant. Compare State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999):
Warrantless searches and seizures fail to meet constitutional requisites unless falling within one of the narrow exceptions to the warrant requirement, such as a search conducted pursuant to consent. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Owen, 453 So.2d 1202, 1206 (La. 1984); State v. Packard, 389 So.2d 56, 58 (La.1980), cert. denied, Packard v. La., 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981). Consent may be given by one having "common authority" over the premises sought to be searched. Common authority is based on "mutual use of the property by persons generally having joint access or control for most purposes." Matlock, 415 U.S. at 171, 172 n. 7, 94 S.Ct. 988. A warrantless search may be valid even if consent was given by one without authority, if facts available to officers at the time of entry justified the officers' reasonable, albeit erroneous, belief that the one consenting to the search had authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 185-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Stewart, 27,049 (La.App. 2d Cir.5/10/95), 656 So.2d 677, writ denied, 95-1764, 95-1768 (La.12/8/95), 664 So.2d 420.
The information available to police indicated that the defendant's girlfriend, Barnes, lived in the residence with the defendant. Whether or not Barnes was actually the lessee who signed the lease is unimportant because she exercised common authority over the premises sufficient to allow the police to enter the residence. This assignment of error is without merit.
Motion to Suppress Defendant's Statement
The defendant urges in his pro se brief that the trial court erred in ruling his statement admissible because "he was by means of psychological influence coerced to give a recorded statement." Defendant claims that he told detectives that he did not wish to speak to them, but that detectives turned off the tape recorder and promised him that he could see his children "in exchange for defendant's self-defense statement."
Before a confession may be introduced into evidence, it must be affirmatively *857 shown that the statement was free and voluntary and not made under the influence of fear, duress, threats or promises. LSA-R.S. 15:451. Trial courts are vested with great discretion when ruling on a motion to suppress. Consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Leger, XXXX-XXXX (La.7/10/06), 936 So.2d 108, cert. denied, ___ U.S. ___, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). In determining whether the ruling on the defendant's motion to suppress was correct, an appellate court is not limited to the evidence adduced at the hearing on the motion; the appellate court may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
Sergeant Tom Oster, the officer who took the defendant's statement, testified that neither he nor the other officer present made any promises or acted improperly to secure the defendant's admissions. After hearing the defendant's recorded statement and the testimony of Sgt. Oster, the district court found the officer's testimony credible and rejected the defendant's assertions of improper conduct. Based upon this record, there is nothing to undermine the court's conclusion that the defendant opted freely and voluntarily to speak with the officers and admit that he killed the victim. This was essentially a credibility determination and there is no showing that the trial court abused its discretion in accepting the testimony of the police officer over the allegations of the defendant. Accordingly, this assignment of error lacks merit.
Assistance of Counsel
The defendant contends he was denied effective assistance of counsel. Defendant urges that his trial attorney's performance was substandard because counsel failed to investigate or subpoena witnesses for the illegal search and seizure argument. He also argues that his trial attorney failed to prove that defendant's statement was coerced, that he acted in self-defense, that he was not the aggressor, that he had no intent to kill the victim and that the victim, not the defendant, was in possession of the murder weapon.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffective assistance of counsel, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An error is prejudicial if it was so serious as to deprive the defendant of a fair trial or "a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To show prejudice, a defendant must demonstrate that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. Strickland, supra. A claim of ineffectiveness is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192 (La.9/6/00), 776 So.2d 396, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001). Here, the record on appeal is sufficient to address defendant's ineffective assistance of counsel claim.
In this case, the defendant admitted to police that he shot the victim, claiming that he acted in self-defense. The implications of the defendant's own statement dictated much of trial counsel's strategy in this *858 case, making the principal question for trial whether the state could prove beyond a reasonable doubt that the defendant did not act in self-defense. Defendant argues in his brief that his statement was coerced because it was given in response to a police promise that he could see his children afterward. Defendant asserts that his counsel was ineffective in failing to subpoena a witness regarding defendant's visit with his daughter at police headquarters.
The record does not support defendant's argument. At trial, defense counsel questioned Sgt. Oster as to whether the subject of defendant's children was raised prior to his statement. Oster testified that defendant had become upset and said he wanted to see his children. Oster stated that defendant may have visited with his children after giving a statement. However, Oster testified that defendant was not told that he was required to give a statement before being allowed to see his children. This testimony was corroborated by the defendant, who stated on the tape that he was not promised anything or coerced to talk. In addition, defense counsel objected in court to the admission of defendant's statement. Thus, the record shows that counsel pursued the suppression of the defendant's statement through appropriate means. Defendant's attorney also addressed through cross-examination the congruence of the physical evidence with defendant's claim of self-defense. Trial counsel's performance was neither deficient nor prejudicial in these regards. Further, most of the defendant's claims of ineffective assistance of counsel merely address the evidence itself; counsel challenged the state's proof on all of the elements of the offense, but the evidence simply was sufficient to satisfy the state's burden of proof.
In his brief, the defendant also contends his attorney should have presented testimony regarding the ownership and lease of his residence. However, the record demonstrated that Barnes not only shared the residence with defendant, but she was the person who actually paid the rent. Thus, as we previously noted, there was sufficient evidence to show that Barnes possessed common authority to validly consent to a police search of the premises. Based upon this record, the defendant has failed to establish any errors by his counsel that were so serious as to deprive him of a fair trial. The assignment of error lacks merit.
Prosecutor's Conduct
The defendant contends the prosecutor improperly referred to the victim's wounds in the opening statement without presenting the autopsy evidence. With this assignment, the defendant complains that the prosecutor "speculated" in the opening statement about the number of bullet wounds the victim suffered and mentioned in closing argument the witness testimony that defendant had a gun, even though the witness could not describe the weapon.
The state's opening statement shall set forth in general terms the nature of the evidence by which the state expects to prove the charge. LSA-C.Cr.P. art. 766. The argument shall be confined to evidence admitted and to conclusions of fact that may be drawn therefrom. LSA-C.Cr.P. art. 774.
In this case, the prosecutor stated in her opening statement, "It was discovered, after the Shreveport Police Department was called, that he was shot numerous times to the head, to the right side of the head, neck, and face." The defendant did not object to this statement, nor would such an objection have been meritorious *859 given the photographs of the victim's body introduced into evidence that showed a number of gunshot wounds to the right side of the victim's head, neck and face. Thus, the prosecutor's opening statement complied with Article 766 in setting forth the general nature of the evidence.
During closing argument, the prosecutor stated:
The one thing that Mr. Smith indicates that was kind of out of order was that Shelby was with this gentleman [the defendant] and this gentleman was present with a weapon. He puts the weapon with Mr. Thomas.
Again, the defendant did not object to this statement, nor would such an objection have been fruitful, because Sam Smith testified that he saw the defendant with a gun at the Circle K a short time before the murder. Thus, the state's closing argument referred to testimony admitted into evidence, consistent with the provisions of Article 774. The assignment of error lacks merit.
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.