NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-739

STATE OF LOUISIANA

VERSUS

DAVONTAY TRASHUN DAVIS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 351,173
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Wilbur L. Stiles, Judges.

AFFIRMED.

Hon. J. Phillip Terrell, Jr., District Attorney
Kelvin G. Sanders, Assistant District Attorney
Charles Johnson, Jr., Assistant District Attorney
Ninth Judicial District Court, Parish of Rapides
P. O. Box 7358
Alexandria, La 71306-7358
(318) 473-6650
COUNSEL FOR PLAINTIFF/APPELLEE:
     State of Louisiana

Annette Roach
Louisiana Appellate Project
P. O. Box 6547
Lake Charles, LA 70606-6547
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:
     Davontay Trashun Davis

**WILSON, Judge.**

A jury found Defendant, Davontay Trashun Davis, guilty of manslaughter, a violation of La.R.S. 14:31. Defense counsel filed both a motion for judgment of acquittal and a motion for new trial. The motions were heard and denied. The trial court sentenced Mr. Davis to four years at hard labor and recommended him for reentry programs and work release. Mr. Davis now appeals. For the reasons expressed below, we affirm the conviction and sentence.

I.

## ISSUES

In this appeal we must decide whether the evidence introduced at trial was insufficient to rebut Mr. Davis's assertion that he reasonably believed that he was in imminent danger of receiving great bodily harm and that the force used was necessary to save himself and others from harm.

II.

## FACTS AND PROCEDURAL HISTORY

On January 30, 2021, Nicholas Smith and his then girlfriend, Ashairen Gaines, went to the home of Mr. Davis and his girlfriend, Kaitlin Smith. Nicholas Smith is the teenage brother of Katlin Smith. Mr. Smith and Ms. Gaines were driven to the residence by Ms. Gaines' grandfather, Shelvey Mark Dunkley. Mr. Smith had previously resided with his sister and Mr. Davis and arrived at the residence to retrieve a bed which allegedly belonged to him. When they arrived, Mr. Smith was let into the house by his sister, and he proceeded to his bedroom. After he began disassembling the bed, an argument began between Mr. Smith and his sister about removing the bed. Mr. Davis informed Mr. Smith he could not take the bed because

it had been sold to Mr. Davis's brother. At some point, Mr. Dunkley backed his pickup truck to the front door of the residence at the instruction of Mr. Smith and Ms. Gaines. Mr. Smith managed to remove one piece of the bed from the home and placed it onto the back of Mr. Dunkley's truck. Mr. Davis and Mr. Smith continued arguing about the bed and Mr. Smith was told to leave along with Ms. Gaines and Mr. Dunkley.

Mr. Smith and Ms. Gaines returned to the truck and informed Mr. Dunkley that they had been told to leave without the bed. After they exited the home, the front door was closed. Mr. Dunkley then decided to see what was going on and knocked on the front door. Mr. Davis opened the front door, and a brief verbal exchange took place between the two men at the entrance of the home. Mr. Dunkley walked toward Mr. Davis, and Mr. Davis pushed him into a brick wall near the front door. In response, Mr. Dunkley punched Mr. Davis. Mr. Davis then took out his pistol and shot Mr. Dunkley five times. After killing Mr. Dunkley, Mr. Davis drove away with his girlfriend. Shortly after fleeing, Mr. Davis, called 9-1-1 and turned himself in to the Alexandria Police Department.

On March 30, 2021, Mr. Davis was indicted and charged with the second degree murder of Mr. Dunkley. Mr. Davis pled not guilty, and the matter proceeded to trial on May 17, 2022. The jury returned a responsive verdict of guilty of manslaughter. On July 19, 2022, defense counsel filed motions for judgment of acquittal and new trial. The motions were heard and denied on July 20, 2022. On the same day, the trial court sentenced Mr. Davis to four years at hard labor and recommended him for re-entry programs and work release. Mr. Davis filed a motion to reconsider sentence on August 9, 2022, which the trial court denied on August 12,

2

2022. Mr. Davis now appeals his conviction challenging the sufficiency of the evidence.

III.

**LAW AND DISCUSSION**

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent, but the minutes of sentencing and Uniform Commitment Order need correction. The court minutes reflect that Mr. Davis's sentence was imposed without the benefit of parole, probation, or suspension of sentence. Although the trial court did not suspend any portion of Mr. Davis's sentence and did not place him on probation, the sentencing transcript contains no restriction of parole. "[I]t is well settled that when the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, we instruct the trial court to amend the court minutes to correctly reflect that the trial court did not deny parole. Likewise, the Uniform Commitment Order indicates that the sentence is to be served without benefit of parole. As such, it should also be corrected in accordance with the transcript.

**SUFFICIENCY OF THE EVIDENCE**

In his sole assignment of error, Mr. Davis argues that the force used to ward off the advancing trespasser at the threshold of his home was reasonable under the particular facts of the case; therefore, the evidence introduced at trial was insufficient to rebut the assertion that Mr. Davis acted in self-defense. After

3

reviewing the evidence, we find there was sufficient evidence to convict Mr. Davis of manslaughter.

The general analysis for insufficiency of the evidence claims is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Mr. Davis does not deny that he shot and killed Mr. Dunkley; rather, he argues that the state failed to disprove that he acted in self-defense. When a homicide defendant claims self-defense, the State has the affirmative burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense; a defendant does not assume the burden of proving self-defense. *State v. Lynch*, 436 So.2d 567 (La. 1983).

Killing in self-defense is governed by La.R.S. 14:20(A), which provides, in pertinent part, "A homicide is justifiable: (1) When committed in self-defense by one who *reasonably* believes that he is in imminent danger of losing his

4

life or receiving great bodily harm *and* that the killing is necessary to save himself from that danger." (Emphasis added). Under La.R.S. 14:20(A)(2), a homicide is justifiable "when it is committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention." This statute goes on to provide that the "circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing." *Id.* Mr. Davis was charged with second degree murder but was convicted of the lesser included offense of manslaughter. Manslaughter is defined as a homicide which would be murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La.R.S. 14:31.

Mr. Davis contends that the killing was justified because Mr. Dunkley did not leave the property, continued to approach Mr. Davis who was in the doorway, and had punched Mr. Davis in the face. He argues that he was afraid of Mr. Dunkley and only acted to protect himself and his girlfriend. In discussing the factors to be considered in examining a self-defense claim, this court has stated:

> "In examining a self-defense claim, it is necessary to consider: (1) whether the defendant reasonably believed that he was in imminent danger of death or great bodily harm; (2) whether the killing was necessary to prevent that death or great bodily harm; and (3) whether the defendant was the aggressor in the conflict." *State v. Mayes*, 14-683, pp. 2-3 (La.App. 3 Cir. 12/23/14), 154 So.3d 1257, 1259, *writs denied*, 15-178, 15-220 (La.11/16/15), 184 So.3d 24. Additionally, in determining whether the defendant had a reasonable belief that the killing was necessary, it is appropriate to consider "the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the

5

> assailant's bad character." *State v. Thomas*, 43,100, p. 5
> (La.App. 2 Cir. 4/30/08), 981 So.2d 850, 854, *writ denied*,
> 08-1276 (La.2/6/09), 999 So.2d 769.

*State v. Fox*, 15-692, p. 4 (La.App. 3 Cir. 2/3/16), 184 So.3d 886, 890, *writ denied*, 16-404 (La. 3/13/17), 216 So.3d 800.

At trial, the State called Nicholas Smith and Ashairen Gaines who witnessed the events leading up to the shooting in the doorway. The State also called Detective Thomas Rodney, who investigated the crime and interviewed Mr. Davis, Detective Chris Jenkins, who photographed and secured the crime scene, and Dr. Christopher Tape, who completed the autopsy report on Mr. Dunkley. Photos of the scene and recordings of Mr. Davis's interview, along with the various 9-1-1 calls made concerning the shooting, were admitted into evidence. The defense called Kaitlin Smith, Mr. Davis's girlfriend, who was also a witness to the events.

In the instant case, the witnesses indicated that Mr. Smith had previously lived in the apartment with his sister in some capacity. Mr. Smith went to retrieve a bed and had his girlfriend's grandfather drive them all to the residence. There was conflicting testimony about whether Ms. Gaines entered the apartment, and the extent of the fight at the door. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, this is a matter of the weight of the evidence, not its sufficiency. *State v. Williams*, 05-59, p.5 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. However, the testimony of all the witnesses established that there was an argument amongst everyone, which resulted in Kaitlin shutting the door and Mr. Smith walking outside. Mr. Smith and Ms. Gaines stated that Mr. Dunkley wanted to talk to Mr. Davis to see what was going on with all the yelling. All three witnesses confirmed that there was a confrontation at the door, and the consensus from the

testimony was that: the group was asked to leave; Mr. Dunkley approached the door to knock; Mr. Davis opened the door; Mr. Davis pushed Mr. Dunkley into the wall; Mr. Dunkley responded by punching Mr. Davis in the face with his fist once; and Mr. Davis pulled out his gun and shot Mr. Dunkley five times. Detective Rodney testified that he searched Mr. Dunkley's vehicle and person and did not locate any weapons. Mr. Davis admitted in his police interview that he did not see a weapon in Mr. Dunkley's hands when he felt threatened and pushed him.

In light of this evidence, we find that the state met its burden of proving that Mr. Davis did not act in self-defense. In his statement to the police, Mr. Davis indicated that he did not know Mr. Dunkley, Mr. Dunkley and the group had been asked to leave, and he could not fight. He repeatedly stated that he was afraid and felt threatened by Mr. Dunkley. Mr. Davis may very well have been of the belief that he was in danger, however, considering the evidence, it was not *reasonable* for Mr. Davis to have believed he was in immediate danger of death or great bodily harm. The testimony indicated that Mr. Dunkley remained outside, even though the door was open until Nicholas was asked to leave. The testimony further indicated that Mr. Dunkley only began approaching the doorway after Nicholas was refused access to his bed. There was no testimony that Mr. Dunkley approached in an aggressive or irrational manner. There was no testimony that Mr. Dunkley used his hands first. Instead, Mr. Davis admitted that he was the one who pushed Mr. Dunkley, which prompted Mr. Dunkley to respond with a single punch.

Not only was it unreasonable for Mr. Davis to believe he was in immediate danger, but the killing was also not necessary to prevent death or great bodily harm. Mr. Davis contends that he had a right to defend himself with force under La.R.S. 14:20(C) which provides,

7

> A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.

This court has explained,

> Moreover we weigh the proportionality of Defendant's response to the threat to determine whether Defendant had a reasonable belief that the killing was necessary. *State v. Mincey*, 08-1315 (La.App. 3 Cir. 6/3/09), 14 So.3d 613. Though no unqualified duty of retreat exists, as noted in *State v. Ingram*, 45,546, p. 10 (La.App. 2 Cir. 6/22/11), 71 So.3d 437, 445, *writ denied*, 11–1630 (La.1/11/12), 77 So.3d 947, "[t]he unavailability of the retreat defense does not end the inquiry into the reasonableness of the use of force even when the accused is in his own home."

*State v. Steinle*, 12-53, p. 8 (La.App. 3 Cir. 10/3/12), 98 So.3d 973, 978, *writ denied*, 2012-2390 (La. 5/31/13), 118 So.3d 387.

Although Mr. Davis had a right to meet force with force, the use of force must be proportional. In the instant case, Mr. Davis used deadly force against an unarmed attack which consisted of a single punch. There was no indication that Mr. Dunkley was attempting to force his way inside Mr. Davis's home. The testimony revealed that Mr. Dunkley only acted with force in response to being shoved into a wall by Mr. Davis. Additionally, from both Dr. Tape's testimony and Mr. Davis's statement to police, the record shows that Mr. Davis and Mr. Dunkley were close to the same height, but Mr. Davis was twenty-years old and weighed approximately 290 lbs. while Mr. Dunkley was forty-eight and weighed about 180 lbs. Under these facts, Mr. Davis used a disproportionate amount of force to defend himself after being punched once.

In *State v. Mincey*, 08-1315, (la.App. 3 Cir. 6/3/09), 14 So.3d 613, the victim was in a nightclub when the defendant bumped into him. Words were exchanged, and the defendant walked out of the club followed by victim's friends who confronted Defendant about the bumping incident. An argument ensued, and Defendant advised them that he was in possession of a gun. At this point, the victim exited the club and confronted the defendant and attempted to punch him. Defendant then shot the victim in the chest. This court acknowledged that the defendant may have genuinely felt endangered, since the victim had two friends with him, and that some level of fear was objectively reasonable. However, this court concluded "responding to an oncoming punch by shooting the other person in the chest is an excessive response." *Id*. at 616.

This court likewise concluded that shooting the victim in response to an oncoming punch was excessive in *State v. Domingue*, 17-786 (La.App. 3 Cir. 4/18/18), 244 So.3d 489. In *Domingue,* the victim and his girlfriend lived in a trailer owned by the defendant. An argument between the victim and his girlfriend took place. The defendant exited his room with a gun and ordered the victim to leave, but the victim refused, and the argument escalated. At some point the victim pulled his hoodie off, a gesture interpreted as the beginning of a fight, and advanced toward the defendant. The defendant then fired a lethal shot at the victim. This court found that the defendant used disproportionate force against an unarmed victim.

In the instant case, Mr. Davis shot Mr. Dunkley at point-blank range both in the head and chest in response to a punch by an older, smaller man. This force was vastly disproportionate to the force used by Mr. Dunkley. Thus, we find that the jury's determinations in the present case were not unreasonable, and the

9

State presented sufficient evidence to disprove Mr. Davis's claim of self-defense. Accordingly, we affirm Mr. Davis's conviction and sentence.

IV.

## CONCLUSION

For the foregoing reasons, Mr. Davis's conviction and sentence are affirmed. The trial court is instructed to amend the court minutes and the Uniform Commitment Order to correctly reflect that the trial court did not deny parole and defendant be provided with notice of said amendment to the minutes within thirty (30) days.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Court of Appeal.